This item of report is now in session. Please come to order. We are we are back in session and our next case is Gorss Motels against Brigadoon Fitness. Mr. Herra. Good morning. May it please the court, Glenn Herra for the appellate, Gorss Motels, Inc. Can the court hear me all right? Not easily. It sounds like you have you're speaking into a very bad microphone. That may be something beyond your power to deal with. It sounds like an old AM radio broadcast. Oh no. I'm trying to turn up my volume. Yeah. Well, please proceed. Zoom is not optimal. We have to make do as best we can. Very well. Thank you, Your Honor. This is a junk facts case under the Telephone Consumer Protection Act 1991, the TCPA. The court has seen cases under this statute before. It's recognized that class certification is normal in this type of case given that the same facts is typically sent to thousands of fax numbers in these mass fax broadcasts. This court has twice affirmed summary judgment for a certified class. First in 2013 in Holzman v. Terza and more recently in 2020 in Physicians Health Source v. A-S Medication. The district court in this case, however, denied class certification based on its conclusion that individual issues predominated regarding the defendant Brigadoon's affirmative defense that it obtained prior express invitation or permission from the class members to send fax evidence. Well, it appears that Brigadoon didn't simply buy a list of general criteria but carefully compiled a list of contacts with which it had existing contracts and relationships. So there is, seems to me, likely consent for some of them and a court would have to examine these recipients individually on this key issue of consent which would, you know, defeat predominance. Where do you think the flaw is in that argument? The flaw is, the key to it is, that the burden of proving prior express permission is on the defendant and the FCC, the Federal Communications Commission, put the burden on the defendant in the 2006 order because it knew that fax advertisers would say, yeah, we got permission from everybody, sure, and so the FCC said to forestall that and to protect consumers, which is the purpose of the statute, we are going to put the burden on the defendant. Now when we were in the Ninth Circuit in True Health v. McKesson, the Ninth Circuit said, while the plaintiff bears the burden of proving predominance, of course, is one of the elements of Rule 23, the fact that the defendant strongly affects the analysis because we're only going to look at that consent evidence that the defendant has actually adduced, that it can actually point to. We're not just going to speculate and say, well, it's reasonable to think that there might be some evidence of express permission here for some class members. We're going to require the defendant to show it and the defendant in that case couldn't, well, it had, what he had shown could be decided on a class-wide basis. What we would say to the court on summary judgment here or to the jury at trial if we had to would be, the record before you shows that Brigadoon did not contact any class members before it sent these faxes. It did not try to get their express permission beforehand. What it did was assume that if somebody's a customer of ours or if it's a franchisee of one of the hotel groups that we have a relationship with, which is the case with my client, Gorse Hotels, it was a Wyndham franchisee and Wyndham gave a list of 3,000 or so fax numbers to Brigadoon. Brigadoon would say, we're just going to assume that it's okay to send fax advertises to these people. We don't have to do anything else to get any express permission. But that's not what happened, is it? I mean, Brigadoon, let's see, Brigadoon pointed out that there's a class consented via franchise agreements and approved supplier programs. Why wouldn't that meet the significant percentage standard that, you know, that you've argued applies? Because no franchise agreement that Brigadoon has pointed to, no document, period, actually constitutes prior express invitation or positions health source versus A-S medication. In that case, this court said, we're not going to follow the rationale of the FCC's 1992 order which said, you know, voluntarily releasing your phone number to somebody is, you know, in effect gives prior express consent to receive a voice telephone call. And that's the rationale that the Second Circuit has followed in Gorse versus Land's End, that the Third Circuit followed in positions health source versus Cephalon, and the Eleventh Circuit followed in positions health source versus Cephalon. This court's standards are different. This court requires the sender to show that recipients affirmatively and explicitly gave permission to receive faxes, not other sorts of communications, and to receive advertisements, not others, not other types of messages. And that's a different standard than all these other cases that Brigadoon relies on, and the cases that the District Court relied on in denying class certification. Mostly the FOMER case, that expressly implied that the FCC's standards for voice telephone. So that is the reason why. Mr. Herr, Mr. Herr, is it your position that in order to defeat predominance that the defendant has to prove, has to prove with evidence it's it's burden to show that there are differences? They certainly here, they point to a lot of different agreements and things like that, that would tend to the conclusion that these claims would have to be individually assessed or at least looked at in maybe much smaller groups than what you've proposed. But is it your position that they have to come forward with affirmative evidence at the class certification stage to prove that they would win on their defense in order to avoid a finding of predominance by the Yes, Your Honor. That's the standard that the District Courts in this circuit have applied for many years. You must have to show that a significant percentage of the class actually gave permission. Now it's possible a District Court could say on this record that's in front of me, I think common issues predominate. The defendants haven't proven that a significant percentage consented. That's an inherently interlocutory, you know, tentative ruling. That can always be the defendants have always said was, well, we would have to go look for evidence to see if anyone gave prior express permission. Well, the time to do that was during discovery. I mean, why didn't they come forward with, tell us who's subject to which franchise agreement? Identify your evidence for your affirmative defense. What we have right now, on the record we have right now, I would say. Why do they have to put on a defense, and this is as you said, an affirmative defense, to avoid class certification? As I understand it, the burden of persuasion, or the risk of non-persuasion, is on the proponent of class certification, not the opponent. The nature of your argument seems to be, we don't have to do anything to propose class certification. The whole burden is on the defendant. And I wonder why a District Court is compelled to proceed that way. Your Honor, we do have the burden of proving Will 23b3 predominance. So we've shown that common issues involve whether the fax is an advertiser. Is the defendant the liable sender under the FCC regulations? Because it was a third-party fax broadcaster. Is there a compliant opt-out notice for purposes of the established business relationship defense? Which, at base, is really what the defendant is asserting. But as to the prior express invitation or permission defense, they have to show that it's going to be a real problem at trial. Not that it's just speculation and surmise. They have to tell the court, here's what we're going to show the trier effect. We're gonna prove that some of these people gave prior express permission. And they can't do it under this Court's standards for prior express permission. They probably could do it under the Second Circuit standard, the Third Circuit standard, because in those circuits, just putting a business card out at the reception desk is prior express permission for anyone in the world to pick one up and send you fax advertisements. That's not the standard in this Court. This Court holds that it has to be affirmative and explicit. And they haven't shown that as to anyone. I must say, I don't understand your answer. You're again talking about what Brigadoon would have to show to make an affirmative defense on the merits. That's not the question at this stage. We're at the class certification stage. The burden of non-persuasion, the risk of non-persuasion is on the proponent of class certification. That is on your clients. Why is it a legal error for the district judge to leave the burden on your client? The burden is on us. I understand. And at summary judgment or at trial, we are not eligible for that defense. That's what happened. Brigadoon took a list of fax numbers that it got from Wyndham, a hotel group that it has a relationship with. It made no effort to get prior express permission from the recipients on that list. It didn't have, it didn't even have a business relationship with many of them. Some of them it did, but they're not eligible for that defense. And it did nothing. It just assumed that if we're getting it from Wyndham, it's okay to send faxes. That was mistaken. That was a mistaken proposition of law. It might be only a negligent violation rather than a waltz of our knowing. I must say you're talking about the merits and we are trying on this appeal to deal with class certification, which I wish you would address. Right, but class certification is where we decide can we try this case on a class action basis. Can it be decided on the merits class-wide? That's the question. That's what the predominance question asks. Can we decide the class's claims in one fell swoop? And the answer here is yes, because we will show to the trier of fact that all Brigadoon did was take a list of fax numbers, assume that it was okay because they were getting it from Wyndham, and the jury could say yes, we decide as a class-wide matter, as to all the recipients, especially as to the Wyndham only subclass, which I haven't talked about, that all the defendant is doing is assuming that it had permission without actually ensuring that it did. And that I do want to touch on the Wyndham only subclass. That's a much smaller class. It's about 3,000 and change, 3,316. Those are people who are identically suited to my client, Steven Gorse. They were on the Wyndham list. They weren't, you know, Brigadoon did not get their fax number from another hotel chain or from, you know, some purchasing group or from its own customer records. This was purely from Wyndham. And so, you know, in the alternative, we ask that the court reverse and remand to certify the Wyndham only class. Our primary request, obviously, is that the court reverse and remand as to the all fax recipients class, the 10,000. I'd like to reserve the balance of my time for rebuttal, if I may. Thank you, certainly, Mr. Hara. Mr. Lindstrom. Good morning, Your Honors. May it please the court. The district court did not abuse its discretion here in focusing on the question at the class certification stage, not the summary judgment stage. And that question is whether or not there is a common question that predominates over the individual questions and the individual increase. And the question about what evidence needs to be put on at this stage is whether it's evidence that would show that there are individualized questions. And we did put on evidence that shows that there would be it would need to be resolved for the specific hotel recipients, and particularly in light of the fact that they overlap, that there are multiple possible sources of consent for any given hotel. So, for example, a given hotel might be under a franchise agreement where they've agreed in writing to participating in a marketing program as an approved vendor. And their Second Circuit and the 11th Circuit at the class, excuse me, at the summary judgment stage, have recognized that franchise agreements can provide consent. So we've shown that there are questions about that with respect to 44%, as Judge Rovner mentioned earlier, of the larger class. So what's the argument on the other side is several of the questions have highlighted is trying to require us to actually prove the significant percentage actually consented. But that's not even what some of the district court cases that he's citing for that rely on. They recognize the evidence is not the evidence as to the underlying merits, but evidence as to whether or not there are questions. So for example, in the Tony case, which he cites on page 13, the question the district court was applying into the significant percentage test was if a defendant fails to provide any evidence, the class member's consent phone calls poses an individualized question, particular to a significant percentage of the class. So, you know, keeping the focus on the class certification stage and not making us actually prove our case at the summary judgment stage, I think is an important part of this appeal. We also, in our brief and below, have put on affirmative evidence that shows that there will be affirmative inquiries, excuse me, individualized inquiries that need to be asked. For example, in the case of the Windom Only class, there are individuals where hotel representatives went directly up to a Brigadoon representative and may have provided consent. And so that's an individualized communication that will have to be looked at. And that same person at the trade show might also be an existing or past customer who previously consented. And that same person could also be under one of the various franchise agreements. And again, with respect to the Windom Only class, there are more than 10 franchise agreements that are at play. And when the court also looks at all of the other franchises that are at issue, such as the Interstate Hotel Group, and Choice Hotels, and La Quinta, and Best Western, a number of which have separate independent brands underneath them, there are going to be, you know, literally dozens of franchise agreements that are at play that will also need to be examined. And then a given hotel could also be participating in a performance improvement plan, which be yet another contractual arrangement where approved vendors are specifically supposed to send product information to hotels that need to improve their performance, such as, for example, buying better fitness equipment so that they can meet the brand standards. So all of these individualized questions, as the District Court correctly recognized, are questions that will need to be resolved. And it would require thousands of mini trials to resolve those. I'll also touch briefly on the transferability issue, because as some of the examples I've given have shown, there's not an issue of transferring consent in this case. So AS Medication doesn't change any analysis here. The customers dealing directly with Brigadoon may have consent directly. Tradeshow attendees may have consented directly. People who are on the National Purchasing Network. So all that doesn't mean it's not direct consent, and AS Medication specifically recognized that the ability of a group to provide consent is not an example of transfer of consent. I don't know if the Court has any questions for me. It doesn't look like it. All right. Thank you, Your Honor. In that case, I'll rest. I rest. Thank you, Counsel. Anything further, Mr. Harrah? Your Honor, I would just like to point out that the Second Circuit Authority and Eleventh Circuit Authority that Mr. Lindstrom's relying on, the Second Circuit said, to the extent we are reaching a different conclusion than the Seventh Circuit and A-S Medication, we expressly disagree with the Second Circuit's rationale. So there is a different standard at play here. There's a higher standard for showing prior to recipitation of permission in this circuit. And, you know, all the defendants, all Brigadoon has shown is somebody may have done this, or they may have a franchise agreement that contains a clause that gives prior recipient permission, but they haven't shown that that is actually the case. And they should have to show concrete evidence that that really is an issue in order to avoid class certification. And of course, if the court disagrees with us as to the larger class of all fax recipients, we think at the very least, the court should reverse and remand on the Wyndham only class, the smaller class. I have nothing else. Thank you very much, Counsel. The case is taken under advisement.